IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| WALLACE ANGER, JR., | ) | Case No. 11-03622-TOM-13 |
| | ) | |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| WALLACE ANGER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 15-00109-TOM |
| vs. | ) | |
| | ) | |
| WELLS FARGO BANK, NA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM OPINION

This case came before the Court on April 11, 2017, for trial[1] on the Complaint against Wells Fargo Bank, N.A., filed by Wallace Anger, Jr. Appearing before the Court were Michael J. Antonio, Jr., attorney for Mr. Anger; D. Keith Andress and Catherine Crosby Long, attorneys for Wells Fargo Bank, N.A.; Wallace Anger, Jr., Debtor; and Kathleen Gallant, Andrea Graham, and Brooke Bosier, witnesses. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings in this matter, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this matter.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

defined in 28 U.S.C. § 157(b)(2)(O).[3] This Court has considered the pleadings, arguments of counsel, the testimony of witnesses, the exhibits, and the law, and finds and concludes as follows:

## FINDINGS OF FACTS[4]

In his Complaint against Wells Fargo Bank, N.A. ("Wells Fargo"), Mr. Anger alleges that Wells Fargo, holder of a mortgage on his home located on River Trace Court in Birmingham,[5] "violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692d(5), 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1)."[6] A.P. Doc. 1, Complaint. He contends that he has suffered both emotional distress and economic loss as a result of Wells Fargo's "campaign of deliberate intent to harass and oppress Plaintiff to force Plaintiff to pay Defendant." *Id*. He further contends that Wells Fargo perpetrated a fraud by falsely representing that his mortgage loan had been modified when it in fact had not. *Id.*

At trial, Mr. Anger testified that he originally obtained his loan in May 2009 from Mortgage America, Inc., but since then all of his dealings have been with Wells Fargo. Mr. Anger acknowledged that his first payment was due July 1, 2009, and that all of the payments he has made on the loan have been to Wells Fargo. According to Mr. Anger's response to Wells Fargo's Motion for Summary Judgment,[7] his mortgage was assigned to Wells Fargo on May 23, 2011, at a time when he was behind on the debt.

---

[3] 28 U.S.C. §157(b)(2)(A) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
       ….
       (O) other proceedings affecting the liquidation of the assets of the estate [.]
[4] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.
[5] Relief from the automatic stay was granted to Wells Fargo, by Order entered March 6, 2017 in the main bankruptcy case, on the grounds that Mr. Anger has completed his plan payments in the main case and there is no time remaining for him to cure mortgage arrears. It is unclear whether Mr. Anger continued to reside at the property at the time this adversary proceeding came before the Court for trial.
[6] The Fair Debt Collection Practices Act, or "FDCPA," is located at 15 U.S.C. § 1692, *et. seq*.
[7] This Court denied the Motion for Summary Judgment by Order dated March 6, 2017.

Mr. Anger asserted at trial that someone from Wells Fargo wrongfully entered his house to "winterize" it although he and his son, a college student, were living there at the time. In response to questions about the property appearing empty, he explained that he was away from home much of the time because he works five jobs, and when he is home, he parks in the garage. Furthermore, he stated he does not have much furniture because his wife took most of it in their divorce, and since he does not need much furniture, it has not been replaced.

According to Mr. Anger, the entry resulted in damage to his house when a lock was broken and labels were placed on various items, including the dishwasher, countertops, and stove, resulting in scratches when the labels were removed. His testimony reflects that he knew it was someone from Wells Fargo who entered his house because he called Wells Fargo afterward. He explained that he believes that the incident occurred in 2010 or 2011, although he could not be certain because Wells Fargo came to inspect his property many times; however, he is not aware of anyone actually entering his home on any other occasion. He acknowledged that the locks were never changed and he was never denied access to his home, although he had to go through the garage when the lock had been broken. According to his testimony, the gate code to his neighborhood had changed at some point but he does not know that Wells Fargo did it.

Mr. Anger testified that he tried to get a loan modification several times. Wells Fargo introduced into evidence three letters regarding a modification of Mr. Anger's loan. The first, dated August 1, 2014, explained the modification program and detailed the information that Mr. Anger would need to provide to Wells Fargo. *See* Defendant's Ex. 12(a). The second, dated August 25, 2014, set out questions and issues that Mr. Anger needed to address. *See* Defendant's Ex. 12(b). The third, dated October 2, 2014, informed Mr. Anger that because his "application has

3

been pending for a considerable period of time and we have not yet received a complete application" the modification request was being denied. *See* Defendant's Ex. 12(c).

Mr. Anger did not dispute receiving the letter from Wells Fargo denying his request for a loan modification. However, according to Mr. Anger, he attended "loan modification programs," once at a Sheraton hotel and once at a Holiday Inn Express, where he met with representatives of Wells Fargo. He contends that at one of the programs, he believes in 2015,[8] a Wells Fargo representative told him he was approved for a loan modification and that someone would need to re-inspect his home. In anticipation of the inspection Mr. Anger made home improvements including putting on a new roof, laying sod, refinishing the hardwood floors, and painting inside and out. *See* Plaintiff's Ex. 6. As a result of the home improvements, he no longer has funds that he could have used to catch up mortgage arrears. Mr. Anger stated that although he looked for an inspector for weeks, he never saw or heard from anyone.

Mr. Anger acknowledged that he has nothing in writing from Wells Fargo indicating that his loan would be modified. He asserted that Wells Fargo had been rude with him on the telephone, as he would work with one Wells Fargo representative, get close to a deal on a loan modification, then have to deal with a different representative. However, he admitted that no one from Wells Fargo had "fussed at" him or used an "ugly tone," but instead, the representatives were always pleasant.

Kathleen Gallant, who lives next-door to Mr. Anger's home, testified that Mr. Anger did not live in the property. According to Ms. Gallant, she has lived in her home for twelve to thirteen years, prior to the time Mr. Anger purchased his property. She testified that she has not seen Mr.

---

[8] On cross examination Mr. Anger was asked about his prior deposition testimony wherein he claimed it was in 2014 that he was told that his loan was being modified. Mr. Anger replied that at the time of the deposition he did not have the documentation regarding the repairs (Plaintiff's Ex. 6) in front of him, and after looking at the documentation, it was his estimation that the representation was made in 2015 although he was still not certain.

4

Anger in a number of years, and that a man who appeared to be in his thirties and someone else lived in the house. Ms. Gallant stated that she has never spoken to the man living in the house and she does not know who he is.

Andrea Graham, former counsel for the homeowners association in the subdivision where Mr. Anger lived, testified that she had been retained to collect past-due homeowners association dues from Mr. Anger. She had filed a motion for relief from stay in 2013 that resulted in a consent order requiring Mr. Anger to pay his past-due fees through the Chapter 13 Trustee and pay on-going dues through a bank draft. She stated that this arrangement worked for around one year until a payment was returned for insufficient funds, at which time the arrangement was terminated. It was her testimony that the homeowners association never attempted to foreclose for the delinquent dues while she represented it. According to Ms. Graham, she had no involvement or contact with Wells Fargo regarding Mr. Anger's loan.

Brooke Bosier, loan verification consultant for Wells Fargo, testified that to her knowledge, Mr. Anger had been delinquent on his mortgage payments through most of the life of his loan. She stated that, according to Wells Fargo's records, it had purchased Mr. Anger's loan from Mortgage America in May 2009 within days after the mortgage origination, at a time when the loan was not in default. *See* Wells Fargo's Exs. 9A – 9B. Ms. Bosier explained that Wells Fargo's loan documents provide that it has the right to inspect a mortgagor's property usually one month after it becomes delinquent and thereafter every month it remains delinquent. She further explained that Wells Fargo will not go into a property to winterize it if it appeared that the property was occupied, but would do so in order to protect its lien if the property appeared to be vacant. According to Ms. Bosier's review of the records, the winterization of Mr. Anger's house occurred in November 2010.

5

Case 11-03622-TOM13    Doc 161    Filed 07/03/17    Entered 07/03/17 09:10:19    Desc
Main Document    Page 5 of 10

Ms. Bosier explained that according to Wells Fargo's records, in June 2013 and July 2014, Mr. Anger attended "home preservation workshops" wherein a homeowner may talk to a representative face-to-face to learn what documents were needed to go forward with a loan modification. According to Ms. Bosier, Wells Fargo representatives are not authorized to actually modify loans at home preservation workshops; the representatives at the workshops are not underwriters, and even if they had been, documentation from Mr. Anger still would have been needed. Furthermore, Wells Fargo would have needed authorization from Mr. Anger's bankruptcy attorney to negotiate a modification and none had been given. Ms. Bosier testified that according to Wells Fargo's records, a loss mitigation review of Mr. Anger's loan had been opened on July 31, 2014 after he attended the July 2014 workshop. The loss mitigation status was removed from his loan October 2, 2014 due to Wells Fargo not having received sufficient information from Mr. Anger. *See* Defendant's Exs. 9G – 9H. According to Ms. Bosier's testimony, Wells Fargo's records do not reflect any further loss mitigation review of Mr. Anger's loan since that time.

Mr. Anger filed his Chapter 13 bankruptcy petition on July 21, 2011 and received his discharge on March 9, 2017. This adversary proceeding against Wells Fargo was filed on August 30, 2015. Wells Fargo filed a Motion for Summary Judgment on August 22, 2016, which was denied by this Court's Order of August 6, 2017. In conjunction with the trial, Wells Fargo filed a Motion for Judgment on Partial Findings on April 11, 2017, which was denied by Order entered April 12, 2017.

## **CONCLUSIONS OF LAW**

COUNT I: FDCPA

Before the Court addresses Wells Fargo's alleged violations of the FDCPA, it must determine that the FDCPA applies to Wells Fargo in the first place. Mr. Anger contends that Wells

6

Fargo is a "debt collector" as defined in § 1692a(6) of the FDCPA and is thus subject to its provisions. Section 1692a(6) provides in relevant part:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include –
> . . . .
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . .

15 U.S.C. § 1692a(6). The Eleventh Circuit Court of Appeals has emphasized that:

> Before a person can qualify as a "debt collector" under the FDCPA, he must satisfy the Act's substantive requirements. *See* § 1692a(6). Pursuant to the plain language of the statute, a "debt collector" includes (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. In contrast to the exclusion at § 1692a(6)(F)(iii), the statutory definition of "debt collector" applies without regard to the default status of the underlying debt.

*Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015) (footnote omitted).[9]

With regard to the first definition, a collector of debts is a "debt collector" under the FDCPA if collecting debts is its principal purpose which, as one court has noted, "is not the case for Wells Fargo, a large nationwide bank." *Berman v. Wells Fargo Bank, N.A.*, No. 6:12-cv-405-Orl-37KRS, 2013 WL 145501, at *3. According to the second definition, a debt collector is someone who regularly collects debts owed to someone else. The relevant question is not whether

---

[9] The Eleventh Circuit recognized that the term "debt collector" also includes a creditor who collects its own debts while using a name that suggests that the attempted collection is being done by a third party; however, the court did not address this definition because neither the plaintiff nor the defendant indicated the definition was applicable. It appears this definition is inapplicable to the case before this Court as well.

7

the debt had been previously owned by another but is whether the debt is owned by another at the time of collection. *Davidson*, 797 F.3d at 1318. *See also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1721 – 22, 1726 (June 2017) (affirming the Fourth Circuit's determination that a company collecting debts that it owned after having purchased them from another did not meet the FDCPA's definition of "debt collector."). The Eleventh Circuit Court of Appeals has concluded "that a person who does not otherwise meet the requirements of § 1692a(6) is not a 'debt collector' under the FDCPA, even where the consumer's debt was in default at the time the person acquired it." *Id*. at 1316. This Court agrees that Wells Fargo cannot be characterized as a debt collector under the first definition in § 1692a(6) of the FDCPA since its principal purpose is not the collection of debts. Ms. Bosier testified that Wells Fargo actually purchased the loan to Mr. Anger within days after the loan was made. Since the debt belongs to Wells Fargo, the second definition in § 1692a(6) is inapplicable as well. Mr. Anger has argued that the debt was in default at the time Wells Fargo acquired it, while Ms. Bosier testified that it was not. Since Wells Fargo is not a debt collector subject to the FDCPA's provisions, it is unnecessary for the Court to determine whether the debt was in default at the time the debt was acquired or whether any of the actions taken by Wells Fargo violated the FDCPA. The count in Mr. Anger's Complaint alleging violations of the FDCPA is due to be denied.

COUNT II: FRAUD

Mr. Anger asserts that Wells Fargo has committed fraud under Alabama law by representing to him that he had been approved for a loan modification when he, in fact, had not. According to the Alabama Supreme Court, "'[t]o establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury

8

Case 11-03622-TOM13    Doc 161    Filed 07/03/17    Entered 07/03/17 09:10:19    Desc
Main Document      Page 8 of 10

resulted from that reliance.'" *Aliant Bank v. Four Star Invs., Inc.*, No. 1150822, 2017 WL 1787935, at *22 (Ala. May 5, 2017) (quoting *Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So. 2d 580, 581 (Ala. 1994)).

As to the first element, before a court can consider whether a representation was false, it must determine whether there is sufficient evidence to prove the defendant made a representation at all. *Smith v. Wells Fargo Fin. Ala., Inc. (In re Smith)*, BK No. 10-06841-TOM-13, AP No. 11-00226, 2012 WL 4090736, at *7 (Bankr. N.D. Ala. Sept. 12, 2012) (Mitchell, J.). In this case, the only evidence that a Wells Fargo representative told Mr. Anger that he was approved for a loan modification is Mr. Anger's testimony, which is contradicted by other evidence presented. Mr. Anger could not produce a signed modification agreement, a proposal to modify that had not been denied, or any additional evidence outside of his testimony, that Wells Fargo had made or was considering making a modification to his loan. The testimony of Ms. Bosier revealed that Wells Fargo representatives at home preservation workshops cannot modify mortgages, and further, that Mr. Anger's bankruptcy attorney's authorization would have been needed before a modification could be negotiated. While Ms. Bosier's testimony does not prove that a Wells Fargo's representative did not tell Mr. Anger that his loan had been modified, it does suggest it less likely that such a representation would be made since it would be against Wells Fargo's policies and procedures. Every week this Court reviews multiple proposals, filed by both debtors and creditors, regarding modification of mortgage loans held or serviced by Wells Fargo and countless other financial institutions. In every instance the proposed modification is evidenced by written documentation. Perhaps there was a misunderstanding between Mr. Anger and the representative that led Mr. Anger to believe he had been approved for a modification. Given the amount of time that Mr. Anger has been attempting to modify his loan it is possible that some of the exact details

have been misremembered.  Regardless, given that there are no written documents evidencing that Mr. Anger would receive a modification, and that Wells Fargo representatives at home preservation workshops are not authorized to approve mortgage loan modifications, this Court must conclude from the weight of the evidence that no representation was made that Mr. Anger would receive a modification.  Thus, it is not necessary for the Court to analyze the remaining elements of fraud.  Mr. Anger's fraud count is due to be denied.  A separate order consistent with this Memorandum Opinion shall be entered.

Dated:  July 3, 2017                                                              /s/ Tamara O. Mitchell
                                                                                            TAMARA O. MITCHELL
                                                                                            United States Bankruptcy Judge

TOM/dgm